UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-5 RAMASAMI GUNABALAN, M.D,

Defendant.

No. 13-20913

Hon. Paul D. Borman

VIO: 18 U.S.C. § 1956(h)
Money Laundering Conspiracy
18 U.S.C. § 1349
Wire Fraud Conspiracy

## THIRD SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

1

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare Program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part B of the Medicare Program covered the costs of physicians' services and other ancillary services not covered by Part A. Part B of the Medicare program covered a limited set of medications, including medications that were administered via infusion and that were furnished as part of a physician service. Infusion treatments involved the administration of medication through a catheter into the bloodstream.

4. Medicare Part B was administered in Michigan by Wisconsin Physician Services ("WPS"), a company that contracted with CMS to receive adjudicate, process, and pay certain Part B claims.

5. Medicare Part D provides prescription drug coverage to persons who are eligible for Medicare. Under the program, eligible Medicare beneficiaries may enroll in a Medicare Prescription Drug Plan that adds prescription drug coverage to traditional Medicare. Alternatively, Medicare eligible beneficiaries may obtain prescription drug coverage by enrolling in a Medicare Advantage Plan under Part C of the Medicare program. Such Medicare Advantage Plans provide the full range of Medicare coverage to enrollees, including a prescription drug benefit under Medicare Part D.

6. Under Part D of the Medicare program, pharmacies enter into agreements, known as Retail Network Agreements, with the Medicare Prescription Drug Plans. Pursuant to these Retail Network Agreements, the pharmacies agree to, among other things, dispense prescription drugs in accordance with federal and state rules and regulations.

7. In order to be reimbursed for prescription drugs provided to Medicare beneficiaries, a pharmacy must obtain a prescription authorized by a physician or other qualified medical provider. Once a pharmacy obtains the prescription – either from the health care provider or from the beneficiary – the pharmacy submits a claim for the prescription drug to a Pharmacy Benefit Manager (PBM). PBMs are contracted by the Medicare Prescription Drug Plans – or in some cases are business units within the plans – to process claims for prescription drug benefits on behalf of the plans, in accordance with the requirements set forth by the plans.

8. Once the PBM approves the claim, a prescription drug "label" is printed by the pharmacy, and the prescription drug is dispensed to the Medicare beneficiary. Among other things, this label includes the name of the Medicare beneficiary, the drug dispensed, the lot number of the prescription drug dispensed, and the expiration date of the drug.

9. Later, the PBM pays the pharmacy for the claim for the prescription drug

event, e.g. the dispensing of prescription drugs to a beneficiary, minus any co-pay to be paid by the Medicare beneficiary. The PBM, in turn, is reimbursed by the Medicare Prescription Drug Plan for those prescription drug claims.

10. Payments under the Medicare Program were made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

11. A Medicare claim was required to set forth, among other things, the beneficiaries' names, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who ordered the services. In order to receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, beneficiary, and services rendered, among other things.

12. Elite submitted claims to the Medicare program for services that were never rendered.

13. Raymond Arias, a convicted cocaine dealer who lacked any medical training, would beneficially own, control and operate Elite for the purpose of billing Medicare for injection or infusion therapy that was not, in fact, provided.

4

14. Raymond Arias would beneficially own, control and operate Elite for the purpose of billing Medicare for injection or infusion therapy that was not, in fact, provided.

15. RAMASAMI GUNABALAN, M.D., a physician trained in radiology would invest $40,000 in Elite Wellness, which was a clinic that purported to provide treatments to Medicare beneficiaries with human immunodeficiency virus (HIV).

16. At all times pertinent to this indictment, Raymond Arias was a convicted cocaine dealer who lacked any formal medical or business education.

17. At all times pertinent to this indictment, Emilitza Arias who was between the age of 23 and 24 years of age and who lacked any formal medical or business education.

18. RAMASAMI GUNABALAN, M.D., would sign the Articles of Incorporation of American Wholesale Pharmaceuticals (American), listing himself as the Registered Agent and sole Incorporator of American. This form would list the address of the registered office to be 17200 East 10 Mile Road, Suite 114, Eastpointe, Michigan.

19. RAMASAMI GUNABALAN would submit, or cause the submission submitted, these Articles of Incorporation to the State of Michigan on behalf of American, in order to conduct business as a Domestic Profit Corporation.

American was issued a Manufacturer/Wholesaler pharmaceutical license by Michigan Department of Licensing and Regulatory Affairs.

20. RAMASAMI GUNABALAN would opened a bank account for American. Huntington National Bank account number #######5381, dated September 2, 2011, shows signatures of GUNBALAN as President/Owner/CEO. The address used for AMERICAN on Huntington #######5381 was 363 West Big Beaver Road, Suite 200, Troy, Michigan, a property owned by RAMASAMI GUNABALAN.

21. Raymond Arias, Roberto Saladrigas, Virgilio Adi Cordero-Quevedo, who was a federal fugitive using an alias and stolen identity, and others known and unknown to the Grand Jury, would wire the proceeds of the health care fraud generated by fraudulent claims submitted by Elite Wellness through bank accounts located in Mexico and Panama in the following transactions:

| Account Number | Originating Bank | Date | Description | Amount | Intermediary Bank | Beneficiary Bank | Account Holder |
|---|---|---|---|---|---|---|---|
| xxxx_xxxx_9598 | Bank of America | 9/9/2010 | Wire Transfer | (150,000.00) | HSBC Bank, USA | MultiBank, Inc. | Company 1 |
| xxxx_xxxx_9598 | Bank of America | 9/17/2010 | Wire Transfer | (187,217.24) | Deutsche Bank Trust Co. | Consultoria Intl Banco, SA Cuenta | Company 2 |
| xxxx_xxxx_9598 | Bank of America | 9/23/2010 | Wire Transfer | (157,217.24) | Deutsche Bank Trust Co. | Consultoria Intl Banco, SA Cuenta | Company 2 |
| xxxx_xxxx_9598 | Bank of America | 9/23/2010 | Wire Transfer | (112,782.76) | Deutsche Bank Trust Co. | Consultoria Intl Banco, SA Cuenta | Company 2 |

| Account Number | Originating Bank | Date | Description | Amount | Intermediary Bank | Beneficiary Bank | Account Holder |
|---|---|---|---|---|---|---|---|
| xxxx_xxxx_9598 | Bank of America | 9/27/2010 | Wire Transfer | (197,217.17) | Deutsche Bank Trust Co. | Consultoria Intl Banco, SA Cuenta | Company 2 |
| xxxx_xxxx_9598 | Bank of America | 9/27/2010 | Wire Transfer | (182,783.83) | Deutsche Bank Trust Co. | Consultoria Intl Banco, SA Cuenta | Company 2 |
| xxxx_xxxx_9598 | Bank of America | 9/30/2010 | Wire Transfer | (207,097.17) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 9/30/2010 | Wire Transfer | (143,043.17) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/7/2010 | Wire Transfer | (177,007.24) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/7/2010 | Wire Transfer | (122,992.76) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/12/2010 | Wire Transfer | (152,019.04) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/12/2010 | Wire Transfer | (98,025.21) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/13/2010 | Wire Transfer | (80,017.25) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/19/2010 | Wire Transfer | (149,167.24) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/19/2010 | Wire Transfer | (100,832.76) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/21/2010 | Wire Transfer | (192,175.96) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 10/21/2010 | Wire Transfer | (177,824.04) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 11/23/2010 | Wire Transfer | (60,077.17) | CitiBank | Banco Monex, SA | Company 3 |
| xxxx_xxxx_9598 | Bank of America | 12/3/2010 | Wire Transfer | (15,051.61) | CitiBank | Banco Monex, SA | Company 3 |

22. Raymond Arias and others would caused the proceeds from American to be laundered through the same account in Mexico which facilitated the laundering of proceeds from Elite.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| xxxx xxx5381 | Huntington Bank | 10/21/10 | Wire Transfer | (92,547.22) | CitiBank | Banco Monex, S.A. | Company 3 |
| xxxx xxx5381 | Huntington Bank | 10/25/10 | Wire Transfer | (90,000.00) | CitiBank | Banco Monex, S.A., | Company 3 |
| xxxx xxx5381 | Huntington Bank | 11/10/2010 | Wire Transfer | (20,642.00) | CitiBank | Banco Monex, S.A. | Company 3 |

23. RAMASAMI GUNABALAN, M.D., would provide Raymond Arias with an American Express credit card issued in the name of MRI Consultants, LLC, a GUNALABALAN-controlled company which Arias would use for personal expenses including airfare and limousines.

## COUNT ONE

*(18 U.S.C. § 1956(h) –Conspiracy to Launder Monetary Instruments))*

**D-5 RAMASAMI GUNABALAN, MD**

24. From in or about June 2010 through in or about December 2010, in the Eastern District of Michigan and elsewhere, the defendant RAMASAMI GUNABALAN, Raymond Arias, and others known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other

persons known and unknown the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a. To knowingly conduct a financial transaction affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, to wit: health care fraud a felony under Title 18, United States Code, Section 1347, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## OVERT ACTS IN FURTHRANCE

25. RAMASAMI GUNABALAN provided Raymond Arias with $40,000 to create Elite Wellness, a purported clinic which submitted claims to Medicare for infusion therapy treatments which were never provided in many instances.

26. Raymond Arias, Rebecca Higgins, and others caused the submission of more than $12,000,000 in fraudulent claims to Medicare.

27. Raymond Arias, Rebecca Higgins, and others both known and unkown to the grand jury transported the United States currency from Florida to Michigan where RAMASAMI GUNABALAN, M.D., exchanged United States currency

provided to him by Raymond Arias and others to checks written to Emilitza Arias, who lacked any education beyond high school and or any medical training.

28. RAMASAMI GUNABALAN wrote "Marketing" on the memo line of checks written to Emilitza Arias, who provided no services to GUNABALAN.

29. Raymond Arias provided United States currency that he obtained from Florida to RAMASAMI GUNABALAN, M.D., who wrote bank checks from PET Consultants to Emilitza Arias in the following amounts:

| To | From | Date | Check # | Amount |
|---|---|---|---|---|
| E.A. | PET Consultants | 7/1/2010 | 1604 | $10,522.17 |
| E.A. | PET Consultants | 8/1/2010 | 1605 | $10,522.17 |
| E.A. | PET Consultants | 9/10/2010 | 1606 | $10,522.17 |
| E.A. | PET Consultants | 10/1/2010 | 1607 | $10,522.17 |
| E.A. | PET Consultants | 11/1/2010 | 1608 | $7,911.32 |
| E.A. | PET Consultants | 1/14/2011 | 1684 | $35,000.00 |
| E.A. | PET Consultants | 1/28/2011 | 1685 | $50,000.00 |
| E.A. | PET Consultants | 2/25/2011 | 1691 | $75,000.00 |
| E.A. | PET Consultants | 3/15/2011 | 1699 | $40,000.00 |
| Total | | | | $250,000.00 |

## COUNT TWO

(Conspiracy to Commit Wire Fraud- 18 U.S.C. § 1349)

**D-5 RAMASAMI GUNABALAN**

30. The allegations contained in paragraphs 1-23 are realleged and incorporated by reference.

31. On or about the dates the dates set forth below, in the Eastern District of Michigan and elsewhere within the jurisdiction of this court, RAMASAMI GUNABALAN, Raymond Arias, and others known and unknown to the grand jury did willfully and knowingly combine, conspire, confederate and agree with each other and others, known and unknown to the Grand Jury to devise a scheme and artifice to defraud and to obtain monies and property from others by means of false and fraudulent pretenses, representations, and promises, did for the purpose of executing said scheme and artifice knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce a writing, sign, signal, and sound in violation of Title 18, United States Code, Section 1343 as follows:

32. Between October 2011 and April 2012, American sold the following non-controlled substances to Pharmacy-1 which in return submitted checks to American. Pharmacy-1 then submitted claims to Medicare Part-D for the following pharmaceuticals:

| Drug | Quantity Purchased | Quantity Dispensed | Medicare Payments |
|---|---|---|---|
| ABILIFY 10 mg | 600 | 1442 | $ 27,727.16 |
| ABILIFY 15 mg | 600 | 1128 | $ 21,689.04 |
| ABILIFY 5 mg | 90 | 1725 | $ 32,109.52 |
| ATRIPLA | 3630 | 6317 | $ 375,241.26 |
| CELEBREX 100 mg | 100 | 1275 | $ 3,705.16 |
| CELEBREX 200 mg | 1100 | 4765 | $ 21,472.84 |
| COMBIVIR | 180 | 1200 | $ 18,235.77 |
| CYMBALTA 30 mg | 30 | 2444 | $ 14,490.88 |
| CYMBALTA 60 mg | 420 | 4162 | $23,992.25 |
| DIOVAN | 90 | 3584 | $ 12,065.97 |
| EPZICOM | 990 | 5467 | $ 182,248.46 |
| GEODON 60 mg | 120 | 360 | $ 3,667.29 |
| GEODON 80 mg | 300 | 1537 | $ 15,495.40 |
| INTELENCE | 240 | 9104 | $ 63,221.57 |
| ISENTRESS | 4740 | 25404 | $ 443,088.73 |
| KALETRA | 2280 | 10440 | $ 65,480.17 |
| LEXIVA | 720 | 8144 | $ 109,665.92 |
| MEPRON | 1050 | 7950 | $ 42,905.74 |
| NAMENDA | 240 | 15683 | $ 57,551.47 |
| NORVIR | 3330 | 8255 | $ 73,538.59 |
| PLAVIX | 270 | 13699 | $ 90,903.64 |

| Drug | Quantity Purchased | Quantity Dispensed | Medicare Payments |
|---|---|---|---|
| PREZISTA 400 mg | 3960 | 8728 | $ 154,603.51 |
| PREZISTA 600 mg | 2640 | 7546 | $ 131,749.57 |
| REYATAZ 200 mg | 300 | 2866 | $ 49,011.42 |
| REYATAZ 300 mg | 300 | 6945 | $ 231,767.32 |
| SELZENTRY | 120 | 1020 | $ 17,523.26 |
| SEROQUEL | 480 | 1658 | $ 25,828.98 |
| SINGULAIR | 450 | 7612 | $ 40,846.20 |
| SUSTIVA | 210 | 2610 | $ 51,967.59 |
| TRIZIVIR | 240 | 718 | $ 17,463.84 |
| TRUVADA | 7680 | 20693 | $ 817,418.72 |
| VIRACEPT | 120 | 1440 | $ 9,289.97 |
| VIRAMUNE | 240 | 2840 | $ 28,849.80 |
| VIREAD | 390 | 2200 | $ 57,721.47 |
| ZIAGEN | 120 | 5666 | $ 53,354.86 |
| Total | 38,370 | 206,627 | $ 3,385,893.34 |

33. American was not an authorized distributor of record of the pharmaceuticals which they sold to pharmacies in Pennsylvania, New Jersey, and Massachusetts.

34. On May 16, 2012, American provided a forged pedigree to Pharmacy-1, which falsely represented that the pharmaceuticals sold by American were obtained from Omnicare, Inc., when, in fact, American never purchased the pharmaceuticals from the source listed on the pedigree.

35. RAMASAMI GUNABALAN, M.D., Raymond Arias, and others

through American, caused misbranded prescription drugs to enter interstate commerce by purchasing the prescription drugs from an unlicensed, illegitimate source. On at least one occasion, a fraudulent drug pedigree statement was created and transmitted to a Medicare-participating pharmacy.

36. American never purchased nor manufactured the pharmaceuticals which it sold to pharmacies in Pennsylvania, New Jersey, and Massachusetts.

37. American deprived Pharmacy-1 of the benefit of purchasing the pharmaceuticals distributed through the legitimate course of business.

38. Following the indictment and arrest of Raymond Arias, RAMASAMI GUNABALAN, M.D., caused the transfer of proceeds obtained by American via wire transfer and bank draft of the proceeds the sale of misbranded pharmaceuticals to various accounts controlled by RAMASAMI GUNABALAN, M.D., and others.

| To | From | Date | Check # | Amount |
| --- | --- | --- | --- | --- |
| AMERICAN | Pharmacy 1 | 5/10/2012 | | $90,702.87 |
| F.C.G. | AMERICAN | 5/14/2012 | 1025 | $77097.43 |
| AMERICAN | Pharmacy 1 | 5/14/2012 | | $90,702.88 |
| MRI Consultants | AMERICAN | 5/16/2012 | Online Transfer | $30,000.00 |
| F.C.G. | AMERICAN | 5/18/2012 | 1028 | $25,097.44 |
| F.C.G. | AMERICAN | 5/21/2012 | 1026 | $26,000.00 |
| F.C.G. | AMERICAN | 5/21/2012 | 1027 | $26,000.00 |

# CRIMINAL FORFEITURE
## (18 U.S.C. § 982)

### D-5 RAMASAMI GUNABALAN, M.D.

39. The allegations contained above are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of any property, real or personal obtained by the defendant, RAMASAMI GUNABALAN, M.D., by commission of the offense charged in Counts 1-2 pursuant to the provisions of Title 18, United States Code, Sections 982(a) and (a)(7).

40. Pursuant to Title 18, United States Code, Sections 982(a) and (a)(7), upon conviction of RAMASAMI GUNABALAN, M.D., for any of the offenses charged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offense and or involved in the laundering of monetary instruments.

30. If the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Sections 982(a)(2) and (a)(7), as a result of any act or omission of the defendants:

    i.        cannot be located upon the exercise of due diligence;

    ii.       has been transferred or sold to, or deposited with, a third party;

iii. has been placed beyond the jurisdiction of the Court;

iv. has been substantially diminished in value; or

has been commingled with other property that cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek to forfeit any other property of the defendants up to the listed value.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
GRAND JURY FOREPERSON

BARBARA L. McQUADE
UNITED STATES ATTORNEY

s/WAYNE F. PRATT
CHIEF, HEALTH CARE FRAUD UNIT
Assistant United States Attorney


s/PHILIP A. ROSS
PHILIP A. ROSS
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9790
Email: Philip.Ross@usdoj.gov


Date: September 11, 2014

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>13-cr-20913 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

██████████████████████████ This matter was opened in the USAO prior to August 15, 2008   [ ]

| ██████████████████████████ | Companion Case Number: N/A |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: N/A |
| ☐ Yes    ☒ No | AUSA's Initials: _PAR_ |

**Case Title:** USA v. _Ramasami Gunabalan, M.D._

**County where offense occurred :** _Wayne and Oakland_

**Check One:**    ☒ Felony          ☐ Misdemeanor          ☐ Petty

____Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

██████████████████████████████

**Superseding to Case No:** _13-cr-20913_        **Judge:** _Paul D. Borman_

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Ramasami Gunabalan, M.D. | 18 USC 1956(h)<br>18 USC 1349 | 13-mj-30302 |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 11, 2014
        Date

_/s/ Philip A. Ross_
PHILIP A. ROSS
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9790
Fax:    (313) 226-2621
E-Mail address: philip.ross@usdoj.gov
Attorney Bar #:  N/A

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.                    04/13